IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Roger Allen Dyke, | ) |
|         Plaintiff, | ) |
| v. | ) Civil Action No. 6:19-cv-1521-TMC |
| | ) **ORDER** |
| Dr. John McCree, Nurse Burdetter, | ) |
| Nurse Jones, Nurse Hatfield, | ) |
| Lieutenant Brazzy, Captain Lisa Young, | ) |
| Nurse Troll, Nurse Cooper, | ) |
|         Defendants. | ) |

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action alleging claims of violations of his constitutional rights pursuant to 42 U.S.C. § 1983. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this action was referred to a magistrate judge for pretrial handling. Defendants McCree, Jones, Hatfield, Burdette,[1] and Young (collectively the "moving Defendants") filed a motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies before initiating this action. (ECF No. 23). The court entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying the Plaintiff of the dismissal procedure and of the possible consequences if he failed to respond to the motion. (ECF No. 24). Plaintiff responded to the motion (ECF No. 31), and the moving Defendants replied (ECF

---

[1] Nurse Burdette provided the correct spelling of her name, which has been previously presented in the record as Berdetter and Burdetter.

1

No. 33). Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant moving Defendants' motion to dismiss. (ECF No. 60). Plaintiff was advised of his right to file objections to the Report. *Id.* at 9. Plaintiff filed objections (ECF No. 63), and moving Defendants filed a reply (ECF No. 67).

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In the absence of objections, this court is not required to provide an explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## I. BACKGROUND

The magistrate judge provided a detailed account of the facts of this case. Briefly, Plaintiff is an inmate within the South Carolina Department of Corrections ("SCDC"). In his Complaint, Plaintiff alleges that he was injured on the side of his stomach while he was housed at SCDC's Broad River Correctional Institution ("BRCI"). (ECF No. 1 at 5–6). He alleges that Lt. Brazzy, a former defendant in

2

this action, and Defendant Young knew about his injury and advised him to shower and cover it up. *Id.* Later, he states that he showed his wound to Nurse Cooper, another former defendant in this action, and that she told him to sign up for sick-call. *Id.* Plaintiff argues that he could not get anyone to see him in sick-call. *Id.* However, Plaintiff attached a sur-reply to his sick call request to his Complaint, which includes a response from medical staff stating that Plaintiff's issue had been addressed. (ECF Nos. 1-1 at 1; 40-1 at 1). Nonetheless, Plaintiff alleges that he was later transferred to SCDC's McCormick Correctional Institution ("MCI"), where he showed his wound to Nurse Trull, who told him to sign up for sick-call. (ECF No. 1 at 6). He then saw Nurse Burdette, who gave Plaintiff gauze and told him to keep the wound clean. *Id.* On May 1, Plaintiff saw another nurse and received a prescription for antibiotic medication and ibuprofen. *Id.* However, Plaintiff states that despite the medication, his wound worsened. *Id.* He was seen by Dr. McCree and scheduled for a surgery consultation. *Id.* His surgery consultation was rescheduled once, and then Plaintiff had surgery. *Id.* Plaintiff alleges that following his surgery, the medical staff at MCI did not follow the doctor's orders and that Defendants Jones and Hatfield refused to change his dressings when asked. *Id.* at 7. Plaintiff further alleges he was not given his proper pain medication following surgery. *Id.*

Plaintiff claims he filed a grievance with MCI stating that he was subjected to cruel and unusual punishment based on the facts above. *Id.* at 11. Plaintiff states

that his grievance was denied because he "waited to[o] long to file on this issue." *Id.* Plaintiff attached the grievance form to his Complaint. (ECF No. 1-1 at 6–7). The grievance form indicates that it was received on August 22, 2018, and returned to Plaintiff on August 31, 2018. *Id.* The Warden's decision indicates that Plaintiff's grievance was returned because it was untimely. *Id.* at 7. The decision indicates that the Request to Staff Member ("RTSM") form was submitted on August 8, 2018, but that the incident Plaintiff complained of had initiated on April 23, 2018, according to Plaintiff. *Id.*

## II. LAW AND ANALYSIS

The moving Defendants argue in their motion to dismiss that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (ECF No. 23-1 at 3). The magistrate judge agreed, finding that Plaintiff failed to exhaust his administrative remedies and that, therefore, Plaintiff's case was subject to dismissal. (ECF No. 60 at 7). Plaintiff filed objections to the Report, arguing that he was unable to appeal the denial of his grievance because the response to his grievance was mailed and not hand-delivered, and, therefore, was "extremely slow" getting to him. (ECF No. 63). In his objections, Plaintiff further contends that the court should consider the merits of his claims. *Id.*

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit under § 1983. 42 U.S.C. § 1997e(a) ("No action

4

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006) (internal quotation marks and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* "An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 683 (4th Cir. 2005).

The administrative remedies are dictated by the prison. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). In SCDC, an inmate seeking to complain of prison

conditions must first attempt to informally resolve the complaint within eight working days of the incident by filing a Request to Staff Member ("RTSM") form. SCDC Policy/Procedure, Inmate Grievance System, GA-01.12 § 13.2 (May 12, 2014), http://www.doc.sc.gov/policy/GA-01-12.htm.pdf [*hereinafter* Inmate Grievance System Policy].[2] If the inmate's complaint is not resolved by filing a RTSM form, the inmate must file a Step 1 grievance within eight working days of receiving a response. *Id.* The inmate must attach a copy of the RTSM form to his Step 1 grievance. *Id.* If an inmate's Step 1 grievance is dismissed and returned unprocessed, he may appeal the decision by filing another RTSM form with the Branch Chief within ten days of his receipt of the unprocessed Step 1 grievance. *Id.* at § 13.3. Further, SCD policy provides that "[a]n inmate will submit a grievance within the time frames established in the policy." *Id.* at § 13.2.

Here, Plaintiff acknowledges that his injury occurred on April 17, 2018, while he was housed with BRCI. (ECF No. 1 at 5). Plaintiff arrived at MCI on April 23, 2018. *Id.* at 6. It appears Plaintiff filed RTSM forms regarding his medical care on April 30, 2018; May 3, 2018; June 17, 2018; and August 8, 2018. (ECF No. 1-1 at 2–5). Each of these forms was returned to Plaintiff, and each indicated that Plaintiff's complaints had been addressed. *Id.* Plaintiff then filed his sole Step 1

---

[2] It is well-established that the court may take judicial notice of SCDC's Grievance Policy, SCDC Policy GA-01.12. *See Malik v. Ward*, No. 8:08-cv-01886-RBH, 2010 WL 936777, at *2 n.4 (D.S.C. Mar. 16, 2010) (holding that "[t]he Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12").

grievance with MCI on August 22, 2018. *Id.* at 6. Plaintiff's grievance specifically indicated that he relied on his RTSM form that was filed on August 8, 2018. *Id.* at 5–6. That RTSM was signed by a supervisor on August 8, 2018, and returned to Plaintiff. *Id.* at 5. According to SCDC policy, Plaintiff had eight working days from the date the supervisor signed the RTSM form to file a grievance. *Id.* at 7. Because Plaintiff filed his grievance more than eight working days after his RTSM form had been signed, his grievance was returned as untimely. *Id.*

Plaintiff admits in his objections that he never filed an appeal of the Warden's decision. (ECF No. 63); *see also* (ECF No. 23-2 at 2) (indicating that SCDC has no record of Plaintiff ever filing an SCDC Form 19-11 or a Step 2 grievance form in response to the return of his grievance). Plaintiff states that he was not able to properly file an appeal because the dismissal of his grievance was sent by mail, and it was "extremely slow" in getting to him. (ECF No. 63). However, as the magistrate judge indicated in his Report, (ECF No. 60 at 7), Plaintiff undoubtedly eventually received the dismissal of his grievance, as he filed it along with his Complaint (ECF No. 1-1 at 6–7). Per SCDC policy, in order to exhaust his administrative remedies, Plaintiff was required to file an appeal of that dismissal within ten days of *receiving* that dismissal. Inmate Grievance System Policy § 13.3. Accordingly, because the time for Plaintiff to file an appeal did not begin to run until Plaintiff actually received the dismissal of his grievance, the speed of the mail is irrelevant to Plaintiff's ability

7

to file such appeal. Therefore, the "extremely slow" nature of the mail delivery does not excuse Plaintiff's failure to file his appeal within five days following receipt of the Warden's dismissal of his Step 1 grievance. Because Plaintiff admittedly did not file an appeal of his Step 1 grievance, he failed to exhaust his administrative remedies as required by the PLRA. Accordingly, Plaintiff's case is subject to dismissal, and the court will not address the merits of Plaintiff's claims.

### III. CONCLUSION

After a careful and thorough review of the record under the appropriate standards, as set forth above, the court adopts the magistrate judge's Report (ECF No. 60), which is incorporated herein by reference. The court **GRANTS** the moving Defendants' motion to dismiss (ECF No. 23). Accordingly, Defendants McCree, Jones, Hatfield, Burdette, and Young are **DISMISSED** from the case.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
December 9, 2019

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.